IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PATRICIA MITCHELL-TRACEY, et al.,     * <br>       Plaintiffs <br>                                          * <br>       v.                                 <br>                                          * <br> UNITED GENERAL TITLE INSURANCE <br> COMPANY and FIRST AMERICAN        * <br> TITLE INSURANCE COMPANY, <br>       Defendants                              * <br>                                         *** | Civil No. AMD 05-1428 |

MEMORANDUM OPINION

In this removed action, Plaintiffs allege that Defendants, First American Title Insurance Co. ("First American") and United General Title Insurance Co. ("United General") engaged in a "uniform and illegal practice," and designed and executed "a scheme to cheat consumers," in respect to Defendants' issuance of title insurance policies to homeowners in Maryland who obtain title insurance in connection with the refinancing of residential mortgage loans. That is, Plaintiffs assert that Defendants routinely collected title insurance premiums in excess of that they were legally entitled to charge for refinance transactions. Plaintiffs allege violations of both federal and state law, including claims for violations of the Real Estate Settlement Procedures Act (as to which, by separate order, Defendants' motion for summary judgment has been granted), "money had and received," negligent misrepresentation, and civil conspiracy.

Now pending is Plaintiffs' Motion for Class Certification, which is opposed by Defendants. The court heard extensive oral argument on the motion. For the reasons set forth herein, the motion shall be conditionally granted.

## I.

Title insurance is an integral aspect of virtually every mortgage loan and refinance transaction. Title insurance provides a guarantee to the owner of the parcel, and/or a lender that the property is free and clear of all liens and encumbrances except those specifically included in the title policy. There are two types of title insurance policies available: (1) an owner's policy and (2) a lender's policy. The owner's policy is generally purchased by the borrower/homeowner for the purpose of providing protection of the homeowner's property interest. The lender's policy, although typically paid for by the homeowner or the party refinancing, is purchased for the benefit of the lender/mortgagee providing protection of the lender's security interest in the property. The owner's policy remains in effect as long as that particular homeowner owns the home; a lender's policy remains in effect until the associated mortgage loan has been satisfied.

All insurers doing business in Maryland are governed by the Maryland Insurance Code ("the Code"). The Code requires that a title insurer must file "all rates or premiums, supplementary rate information, forms of contracts, policies, or guarantees of insurance, and all modifications of contracts, policies, or guarantees of insurances that it proposes to use" with the Maryland Insurance Administration ("MIA"). Md. Code Ann., Ins. § 11-403(a)(1)

and (2) (2006).  Both defendants, First American and United General, are title insurers doing business in Maryland and thus are obligated to "hold to the rates or premiums as approved" and may "not deviate from the rates or premiums." Md. Code Ann., Ins. § 11-407(b).  MIA also requires all property and casualty insurers to follow the "Best Price Rule," which requires issuers to provide the consumer with the most favorable price point for which the consumer qualifies.[1]  Although they are not required by state law to do so, each of the Defendants has filed a discounted "reissue rate" with the MIA and thereby offers such rates as published. The reissue rate is applicable for First American borrowers if any of the following apply:

> (A) when, within ten (10) years prior to the application for mortgagee insurance, a policy has been issued on the identical property to the mortgagor as owner.
> (B) when, within ten (10) years prior to the application for mortgagee insurance, a mortgagee policy has been issued for the same mortgagor or on the same property.  The reissue rates, when applicable as outlined above (see section (A) (B) and (C)) shall be 60% of the published rates in force for original insurance.

United General's "reissue rate" is applicable when:

> the owner of property on which application is made for mortgage title insurance has had the title to such property insured as owner within ten (10) years prior to such application, such owner shall be entitled to the following reissue rates on such mortgage insurance up to the face amount of such owner's policy, provided this is provided with a copy of an owner's policy issued by this company or by another company licensed to

---

[1] Defendants dispute whether the "Best Price Rule" applies to title insurance and, as well, whether it supports a claim for judicial relief at all. I of course need not determine these issues at this juncture.

do business in Maryland.  The reissue rate shall be 60% of the original rate
for first and second mortgage.

Here, the named Plaintiffs and potential class members have allegedly been damaged by the Defendants' failure to comply with their own filed and state-approved title insurance premiums. Plaintiffs seek both declaratory relief and monetary damages on behalf of themselves and potentially thousands of others.

II.

Plaintiffs contend that Defendants have engaged in the uniform and illegal practice of systematically charging borrowers, who are refinancing, higher title insurance premiums instead of the lower reissue rates that they have filed with the state's insurance commission. Plaintiffs further contend that they meet the legal requirements for certification under Rule 23 and that a class action is the most efficient mechanism to adjudicate these claims.

Plaintiffs seek certification of two classes consisting of individuals in Maryland who within ten years of having purchased title insurance refinanced the identical underlying mortgages but were charged a title insurance premium that exceeded the applicable premium discount or "reissue rate" on file with the Maryland Insurance Administration ("MIA"). The two classes are defined as follows:

> *First American Class*:
> All persons or entities in Maryland who within 10 years of having previously purchased title insurance in connection with their mortgage or fee interest, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by First American that exceeded the applicable premium discount or "reissue rate" for title insurance on file with the Maryland

4

>Insurance Administration that such persons or entities should have been charged.
>
>*United General Class*:
>All persons or entities in Maryland who within 10 years of having previously purchased owner's title insurance in connection with their mortgage or fee interest, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by First American that exceeded the applicable premium discount or "reissue rate" for title insurance on file with the Maryland Insurance Administration that such persons or entities should have been charged.

Recognizing that if this case is not certified as a class action it cannot be maintained at all, as a practical matter, Defendants have vigorously opposed the class certification motion. They claim that the Plaintiffs do not satisfy the requirements of Rule 23 because: (1) they do not maintain records that Plaintiffs could use to prove class membership, liability or damages; (2) individual issues predominate (e.g., misrepresentation requires individual proof of reliance and as such is not well suited for a class action and that it will be necessary to determine the specific dynamics of each relevant transaction, including whether a particular agent disclosed to the borrower the latter's eligibility for the discounted rate or whether the borrower knew or should have known of the discounted rate prior to completion of the transaction); (3) the primary relief here is for monetary damages and the calculation of damages is highly individualized and is neither typical nor common among all class members; (4) the proposed class definitions are unworkable (e.g., the parties lack the means by which to identify and afford notice to potential class members in that the evidence that would demonstrate membership in the class is in the possession of hundreds of independent

5

title insurance agents and the task of compiling such information to adequately determine class membership is virtually impossible).

### III.

Class certification is a useful tool which can economize and focus judicial resources by allowing the court to consolidate similar claims and provide consistent and conclusive final judgments. Class certification also allows claims that may not otherwise be brought, because bringing individual claims can be cost prohibitive when the remedy is either injunctive relief or small monetary damages. In several state court cases presenting claims substantially identical to those asserted in the case at bar, courts have found class certification appropriate. *See In re Coordinated Title Ins. Cases*, 2 Misc.3d 1007(A), 784 N.Y.S.2d 919 (2004); *Dubin v. Sec. Union Title Ins. Co.*, 162 Ohio App.3d 97, 832 N.E.2d 815 (2005); *Mitchell v. Chicago Title Ins. Co.*, 2003 WL 23786983 (Minn. Dist. Ct. Dec. 22, 2003).

The Supreme Court noted that "[t]he aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guaranty Nat'l Bank of Jackson, Mississippi v. Ropert*, 445 U.S. 326, 339 (1980); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("[t]he

6

policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (internal quotations omitted.).

Rule 23 provides courts with the necessary flexibility to certify a class and monitor its progress to insure certification remains appropriate. The court can only certify a class if the class satisfies all of the prerequisites of Rule 23(a) and the requirements of at least one of the subdivisions of Rule 23(b). In considering a motion for class certification, the court examines the criteria stated in Rule 23 only; review of the merits of the case is not appropriate. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). The court has considerable discretion in determining whether the proposed class meets the requirements of Rule 23. *See Boley v. Brown*, 10 F.3d 218, 223 (4th Cir.1993); *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir.1993); *Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 268 n. 4 (4th Cir. 2002).

IV.

Fed.R.Civ.P. 23 enumerates the requirements for certification of a class action:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if
    (1) the class is so numerous that joinder of all members is impracticable,
    (2) there are questions of law or fact common to the class,

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

    (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    (1) the prosecution of separate actions by or against individual members of the class would create a risk of

      (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

      (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

    (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

    (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Application of the principles embodied in Rule 23 to the circumstances of this case compels the conclusion that the class action device is wholly appropriate.

<u>Impracticability of Joinder</u>

8

While all factors surrounding the case are taken into consideration, numerosity remains an important consideration. *Peoples v. Wendover Funding, Inc.* 179 F.R.D. 492, 497 (D. Md. 1998) (*citing* Alba Conte & Herbert B. Newberg, .1 Newberg on Class Actions § 3.05, at 3-25 (4th ed.2006)). Courts have found classes of as few as forty members sufficiently large to make joinder impracticable. *Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 40 (S.D.N.Y. 1990). A court will also consider the possible geographic disbursal of the claimants, the small size of individual claims, and the inconvenience of trying multiple suits. *Id.* at 498 (*citing Alvarado Partners v. Mehta,* 130 F.R.D. 673, 675 (D.Colo.1990)). It is also important to note that Plaintiffs need not know the exact size of the class but where general knowledge and common sense would indicate that it is large, the numerosity requirement is satisfied. 6 Alba Conte & H. Newberg, *Newberg on Class Actions*, § 3:3 (4th ed. 2006). To require such accuracy in determining the class size would foreclose most class litigation. *Id. at* § 3:5.

Defendants do not appear to contend that Plaintiffs fail to meet the numerosity requirement. Although Plaintiffs have not provided the precise number of members in the potential classes, Plaintiffs assert that based on the level of activity that occurred in the mortgage industry between 2002 and 2005, the number of Maryland borrowers potentially eligible for the reissue rate is considerable; accordingly, Plaintiffs estimate the number most certainly would exceed the 40 members generally accepted to be sufficiently large to make joinder impracticable. In this circumstance the numerosity prong of Rule 23 is satisfied.

9

Commonality, Typicality and Adequacy of Representation

The considerations involved in determining whether plaintiffs meet the commonality, typicality and adequacy of representation prongs of Fed.R.Civ.P. 23(a) are similar and overlapping. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (stating that commonality, typicality, and adequacy of representation merge, "serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of class members will be fairly and adequately protected in their absence."). I will address them each in turn, remaining mindful of their interrelationship.

*Commonality*

For class certification, the claims of the class members must share common legal and factual issues. However, it is not necessary that all issues are shared. *Holsey v. Armour & Co.*, 743 F.2d 199, 216-17 (4th Cir.1984). Rule 23(a)(2) merely requires that there be a single common question of law or fact to satisfy the commonality requirement. "Thus, factual differences among the class members' cases will not preclude certification if the class members share the same legal theory." *Peoples*, 179 F.R.D. at 498 (*citing Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1275 (4th Cir.1981), *vacated on other grounds,* 457 U.S. 1128 (1982)).

The pertinent facts and applicable law at issue in this case are common to all the members of the proposed classes. The scope of the central question shared by all members

of the proposed classes –whether they where eligible for and entitled to the "reissue rate" under the Defendants' filed rates, and whether they failed to receive that rate as a result of Defendants' wrongdoing–is identical in all material respects. Each potential class member engaged in a mortgage refinance whereby she or he purchased title insurance from the Defendants. Although variations exist as to the actual amount of the premium paid by each potential class member, these variations do not alter the fundamental nature of the claims, as it is the nature of the transactions, the rate charged, and the reasons therefor, that are in fact at issue in this case. Moreover, the damages calculation is a straightforward mathematical calculation based on the difference between the rate potential class members received and the filed "reissue rate," the rate that the class members allegedly should have received. Class certification discovery has disclosed that, as to all proposed class members, the Defendants' alleged procedures, protocols, written guidelines and lack of oversight of their Maryland agents–all of which allegedly precluded the members of the proposed class from receiving the appropriate reissue rate–do not vary in any material manner. Defendants allegedly utilized standardized forms, processes and practices. The existence of routine and standardized practices giving rise to numerous claims weigh in favor of finding commonality, as well as typicality. *See, e.g., Talbott v. GC Services L.P.*, 191 F.R.D. 99 (W.D.Va. 2000) (Fair Debt Collection Practices Act claim arising from the mailing of numerous standardized notices); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D. Ariz. 1999) (same); *Peoples*, 179 F.R.D. at 498 (same); *Williams v. Empire Funding Corp.*, 183

F.R.D. 428 (E.D. Pa.1998) (claims, *inter alia*, under TILA involving standardized contracts and sales and referral practices); *Simon v. World Omni Leasing, Inc.*, 146 F.R.D. 197 (S.D. Ala. 1992) (TILA claim involving disclosures in a standardized car leasing agreement).

Defendants argue that they will likely assert defenses as to the level of knowledge each plaintiff had prior to the completion of the transaction. But this is scant reason to deny certification. To be sure, there may be defenses that apply variously to individual plaintiffs. However, the existence of an affirmative defense does not destroy commonality or typicality necessarily, because it is more likely than not that the defenses will be asserted against all or a large number of plaintiffs. Moreover, there is no evidence in the record, and it is difficult to comprehend, that a borrower who is made aware of the opportunity to save money knowingly would elect to pay a higher rate and forgo significant savings. *In re Coordinated Title Ins. Cases*, 2 Misc.3d 1007(A), 784 N.Y.S.2d 919 (2004) ( "In logical terms, it is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars, would choose to pay the higher rate and forego a savings mandated by law"). *Id.*

*Typicality*

The typicality requirement demands that the class claims be fairly encompassed by the class representatives' claims. "The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Peoples*, 179 F.R.D. at 498 (citing

*Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 637 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (1993). The claims asserted in the case at bar involve common issues of fact and law. The facts underlying the named plaintiffs' claims are straightforward and typical as to the proposed class. In each instance, prior to the transactions that are the subject of this case, each of the named plaintiffs had, within the previous 10 years, either purchased their home or refinanced it in a transaction that resulted in the issuance of a title insurance policy. Plaintiffs assert that it is the issuance of this previous insurance policy that legally entitled them to the reissue rate, a 40% discount of the filed rate. However, as a result of Defendants' acts and omissions, the named plaintiffs and all potential class members did not receive the discounted rate.

Defendants argue that each plaintiff and each of the potential class members worked with a different local agent and as a result received a range of information, and that therefore this serves to defeat the typicality requirement. I do not find this contention remotely persuasive. As articulated in *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, "while claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement of Rule 23(a)." 414 F. Supp.371, 375 (E.D. Va. 1976). In this case, Plaintiffs' claims present virtually identical fact patterns and legal theories and are based upon the same conduct by the Defendants. *See Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998) (stating that "the test for determining typicality is whether the claim or

13

defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses.").

*Adequacy of Representation*

The requirements of Rule 23(a)(4) are satisfied if the named plaintiffs' interests are not opposed to those of other class members and that the plaintiffs' attorneys are qualified, experienced and able to conduct the litigation. "The adequacy of representation requirement contained in Rule 23(a)(4) focuses on class counsel's competence and experience and on the degree of antagonism between the class and the representative." *Peoples*, 179 F.R.D. at 499. The class representative must have sufficient interest in the case and be able to adequately represent the interest of all class members. *See Barnett v. W.T. Grant Co.*, 518 F.2d 543, 548 (4th Cir. 1975). At the very heart of this inquiry is whether the absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone that shares their interests. *See* 1 Newberg, et. al § 3:21; *see also George v. Baltimore City Public Schools*, 117 F.R.D. 368, 371 (D. Md. 1987). There is not a scintilla of evidence in the record to indicate that the named plaintiffs have any claim or interest that conflicts with those of the proposed classes. Moreover, the defendants have not challenged the capabilities or qualification of plaintiffs' counsel.

Manageability Under Rule 23(b)

If all four requirements of Rule 23(a) have been satisfied, Plaintiffs must show that any one of the three criteria in Rule 23(b) are met before the class can be certified. This

inquiry focuses on whether the individual claims of the class members overwhelm the claims of the class as a whole and whether; considering all of the factors, class treatment is superior to other forms of adjudication to resolve such claims. Plaintiffs propose that this class action satisfies all three subsections of Rule 23(b).

<u>23(b)(1)</u>

Rule 23(b)(1) serves to guard against the risk of inconsistent or varying adjudication with respect to individual members of the class, thereby establishing incompatible standards of conduct; or where such individual adjudications would serve to be dispositive of the interest of other members or impede or impair their ability to protect their interest if they are not parties to the particular adjudication. Fed.R.Civ.P. 23(b)(1).

Here, Plaintiffs seek to enforce duties and obligations owed to all members of the proposed class. The causes of action brought by the named Plaintiffs on behalf of all class members are based on an alleged pattern of repeated behavior by the Defendants and can be most effectively adjudicated by a class action so as to avoid inconsistent outcomes.

<u>23(b)(2)</u>

Rule 23(b)(2) states that a class action is maintainable where:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

15

Thus, Rule 23(b)(2) requires that the challenged conduct by the defendant be premised on a ground generally applicable to the entire class. In the case at hand, Defendants are alleged to have engaged in a pattern and practice of failing to charge eligible refinancing borrowers the appropriate, discounted reissue rate. If plaintiffs were to prevail, final injunctive relief precluding Defendants from continuing to do business in this matter would be appropriately applicable to the class as a whole.

Defendants argue that 23(b)(2) is inapplicable because Plaintiffs are requesting monetary damages. Plaintiffs answer that they really seek *equitable relief* in the form of *restitution* on behalf of the class members and an injunction against any such activity in the future. However the Plaintiffs' claim for repayment of the alleged overcharge is characterized, Plaintiffs also seek equitable relief. (At the hearing on the motion, Plaintiffs asserted, and Defendants did not deny, that Defendants continue to conduct their title insurance business in Maryland in precisely the same manner challenged in this case.) The mere fact that Plaintiffs seek monetary damages in addition to equitable relief does not preclude treatment of this case as a class action because the relief sought by the Plaintiffs does not relate exclusively or predominately to monetary damages. *Ramirez v. Webb*, 102 F.R.D. 968, 971 (W.D. Mich. 1984).

23(b)(3)

Class certification is appropriate under Rule 23(b)(3) as the fair and efficient method for adjudication because the essential issues, both factually and legally, are common to the

16

class as a whole and predominate over any individual questions. It is indisputable that "certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense' and promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Peoples*, 179 F.R.D. at 501 (quoting *Amchem Product, Inc. v. Windsor* 521 U.S. 591, 615 (1997)). In *Amchem*, the Supreme Court stated that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws." *Amchem* at 625(acknowledging the relative ease with which predominance is met in consumer fraud cases).

In determining whether a class satisfies the requirement of Rule 23(b)(3), a court should consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

With respect to factor (A), the virtual certainty that individual plaintiffs would lack the resources to pursue their individual claims indicates that the interests of putative class members is served by certification. As noted previously by one court:

> This is precisely the kind of case that class actions were designed for, with small or statutory damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant,

17

> one that, if the fact alleges were proved, otherwise might get away with piecemeal highway robbery by committing small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy.

*Van Jackson v. Check'N Go of Illinois, Inc.*, 193 F.R.D. 544, 547 (N.D. Ill. 2000). Because each potential plaintiff's claim amounts to but a few hundred dollars, at most, it is unthinkable that a potential plaintiff would have the resources or the desire to employ such resources in adjudicating individual claims.

Factor (B) is a nonissue here in that there has been no information offered to suggest that there is any pending litigation concerning the controversy commenced by or against any members of the class.

As to factor (C), the facts and circumstances of this case indicate that it is desirable to concentrate these matters in a single forum to conserve the resources of the court as well as of all the parties. Judicial resources are economized and focused by handling this case as a class action. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 1 Newberg § 21:30. Therefore, the most practical means by which potential members of this class may have any recourse against the defendants is through a class action suit.

As for factor (D), although the proposed classes may include thousands of class members, the potential for unmanageability should not be an automatic precursor for denying certification. In *In Re: Visa Check/MasterMoney Antitrust Litigation*, the Second Circuit affirmed certification of a class action that consisted of every business in the United States that accepted Visa and/or MasterCard credit cards. 280 F.3d.124 (2d. Cir. 2001), *cert. denied*, 536 U.S. 917 (2002). The Second Circuit noted specifically that individualized proof of damages does not necessarily create a bar to class actions and that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule." *Id. at* 140. The parties disagree as to whether management issues with respect to the defined classes exist. Defendants contend that the structure of the title insurance business and the normal course of business within the industry make it difficult, if not impossible, to search the policyholder files to determine who may have been eligible for the discounted reissue rate. Plaintiffs argue the contrary and assert that the data collection is not only possible, but that the data are readily available and reasonable methods are available to collect the data. I agree with Plaintiffs.

It strains credulity to suggest, as Defendants do, that the Defendants (and their agents) lack the ability to compile information on insurance policies that they have issued, even if those policies have been issued by independent agents. Moreover, deposition testimony by officials of both Defendants indicate that in addition to information gathered and maintained by each of their independent agents, Defendants themselves also compile and maintain

19

information about each policy issued including the type of policy, the face value of the policy and the amount of premiums paid. Although the task may prove to be a laborious one, this court is not persuaded that it is one that cannot be reasonably managed, and Plaintiffs plainly are willing to do the work. Thus, manageability concerns do not militate against certification.

V.

For the reasons set forth herein, I shall conditionally certify each of the two classes as proposed by Plaintiffs.


Filed: September 26, 2006                         /s/
                                          Andre M. Davis
                                          United States District Judge