```
            IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PATRICIA MITCHELL-TRACEY,     *
et al.,
                              *
     Plaintiffs,
                              *

                              *
          v.                          CIVIL NO.: WDQ-05-1428
                              *
UNITED GENERAL TITLE
INSURANCE CO. and FIRST       *
AMERICAN TITLE INSURANCE
CO.,
                              *
     Defendants.
                              *

*     *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Patricia Mitchell-Tracey, individually and on behalf of a class of similarly situated consumers, sued United General Title Insurance Co. and First American Title Insurance Co. for violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, and other claims in the Circuit Court for Baltimore County. The Defendants removed to this Court under 28 U.S.C. §§ 1332 and 1453. Pending is Mitchell-Tracey's motion to file a second amended complaint. For the following reasons, the motion will be denied.

1

I.  Background

The facts underlying this suit are discussed in *Mitchell-Tracey v. United General Title Insurance Co.*, 237 F.R.D. 551 (D. Md. 2006) and will not be repeated here.  The Plaintiffs allege that the Defendant title insurers and their agents overcharged them for insurance when they refinanced their homes.  *Id*. ¶ 3.  Specifically, the Plaintiffs allege that the Defendants deviated from their rate structure--which was filed with and approved by the Maryland Insurance Administration ("MIA")--by charging an "original issue rate" rather than the discounted "reissue rate" to which the Plaintiffs argue they were entitled.[1]  *Id*.

On April 14, 2005, Mitchell-Tracey filed a class action complaint in the Circuit Court for Baltimore County alleging violations of RESPA, money had and received, negligent misrepresentation, and civil conspiracy.  Paper No. 2.  The Defendants removed to this Court on May 24, 2005 on the basis of

---

[1] The Maryland Insurance Code requires that a title insurer (1) "file with the Commissioner all rates or premiums . . . that it proposes to use" and (2) "hold to the rates or premiums as approved by the Commissioner." Md. Code Ann., Ins. §§ 11-403, 11-407; *see also* § 27-216(b)(1) ("A person may not willfully collect a premium or charge for insurance that . . . exceeds . . . [the] rates as filed with and approved by the Commissioner.")

The Plaintiffs allege that the Defendants filed rate schedules with the Commissioner under which persons buying title insurance for a mortgage refinancing were entitled to a discounted rate (the "reissue rate") if within the previous 10 years they had purchased title insurance for the same mortgage. Am. Compl. ¶¶ 3-4.

diversity.  Paper No. 1.  On July 19, 2005, Mitchell-Tracey amended her complaint to add Milton Brown, Francine Byrd-Brown, and Helen Klatsky as named plaintiffs.  Paper No. 41.  On September 25, 2006, then-District Judge Andre M. Davis granted summary judgment for the Defendants on the RESPA claim.  Paper No. 91.  The next day Judge Davis granted class certification for:

> All persons or entities in Maryland who within 10 years of having previously purchased title insurance in connection with their mortgage or fee interest, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by [one of the Defendants] that exceeded the applicable premium discount or "reissue rate" for title insurance on file with the Maryland Insurance Administration that such persons are entities should have been charged.

Paper No. 93.

On October 3, 2006, the matter was referred to Chief Magistrate Judge Paul W. Grimm for mediation, and discovery was stayed.  Paper No. 95.  A settlement conference was held on December 6, 2006, and over the next two and a half years, the parties made efforts to settle, filing periodic status reports with Chief Judge Grimm.

Another settlement conference was scheduled for March 3, 2009, but on February 23, 2009, the parties requested a postponement pending the Fourth Circuit's decision in *Arthur v. Ticor Title Insurance Company*, a nearly identical case brought

by Plaintiffs' counsel, in which Judge Davis had dismissed the claims for, *inter alia*, failure to exhaust administrative remedies with the MIA.  Paper No. 123.

After the Fourth Circuit affirmed Judge Davis's dismissal in *Arthur*, the parties concluded that mediation would no longer be productive and sought to have the discovery stay lifted. Paper Nos. 134, 135.  The Court lifted the stay on September 30, 2009.  Paper No. 136.

On October 28, the Plaintiffs moved to file a second amended complaint.  Paper No. 138.

II. Analysis

   A.  Fed. R. Civ. P. 15(a)

A party may amend a pleading after a responsive pleading has been served only with leave of court.  Fed. R. Civ. P. 15(a).  "The court should freely give leave when justice requires," *id*., and should only deny a motion to amend when "[1] the amendment would be prejudicial to the opposing party, [2] there has been bad faith on the part of the moving party, or [3] the amendment would have been futile," *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*).

   B.  The Plaintiffs' Motion to Amend

The Plaintiffs seek to amend their complaint to add claims for (1) negligence, (2) breach of contract, and (3) violation of

4

the Racketeer Influenced and Corrupt Organizations Act ("RICO").[2] The Defendants have opposed these amendments on the grounds of futility, bad faith and prejudice.

   1. Futility

The Defendants contend the proposed claims are futile because they would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See United States ex re. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). They rely principally on the Fourth Circuit's decision in *Arthur*--a nearly identical case in which the plaintiffs also alleged that a title insurer had charged them higher rates than it had filed with the MIA--and argue that because the Plaintiffs have not exhausted administrative remedies with the MIA, their claims would not survive a 12(b)(6) motion.

The Fourth Circuit affirmed Judge Davis's Rule 12(b)(6) dismissal of the *Arthur* plaintiffs' claim for failure to exhaust administrative remedies under the Maryland Insurance Code. The court explained that:

> [u]nder Maryland law, when the statutory text creating an administrative remedy is not dispositive [about whether exhaustion is required], there is "a presumption that the administrative remedy is intended to be primary, and that a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy."

---

[2] The Plaintiffs have also abandoned their claims for negligent misrepresentation and civil conspiracy.

*Arthur v. Ticor Title Ins. Co.*, 569 F.3d 154, 161 (4th Cir. 2009) (*quoting Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 706 A.2d 1060, 1069 (1998)).  "Moreover, whe[n] a judicial remedy is 'wholly or partially dependent upon the statutory scheme which also contains the administrative remedy, or upon the expertise of the administrative agency,' Maryland courts have 'usually held' that exhaustion is required."  *Id.* (*quoting Zappone*, 706 A.2d at 1070).

The Fourth Circuit held that the plaintiffs' claim for money had and received was "dependent" on the Maryland Insurance Code because it would succeed "only if [the] plaintiffs [could] show that [the insurer] violated the Code" by charging higher rates than those on file with the MIA.  *Id.*  "If the Insurance Code did not require [the insurer] to adhere to its filed rates, plaintiffs would have no right to recover from [it] for charging an excessive fee."  *Id.*  Further, the plaintiffs' claim implicated the Maryland Insurance Commissioner's expertise; as the court explained, the Commissioner was in a better position than a federal court to determine, *inter alia*, whether the insurer actually violated the Code and, if so, what remedy would be proper.  *Id.*  Thus, the plaintiffs' claim was properly dismissed.  *Id.*

6

The Defendants argue that the Plaintiffs' proposed claims "depend" on the Insurance Code and implicate the expertise of the Commissioner; thus, the claims are subject to dismissal under *Arthur*.  The Plaintiffs respond that the claims are "wholly independent" of the Insurance Code and thus not barred by *Arthur*.  *See Arthur*, 569 F.3d at 161 ("wholly independent" claims not subject to exhaustion requirement).

      a.  Negligence

The Plaintiffs allege that the Defendants: (1) owed them a duty of care not to charge rates higher than allowed by law; (2) breached that duty by failing to obtain documents that would have shown that the Plaintiffs were entitled to a lower rate than they were charged; and (3) as a result of the negligence, the Plaintiffs paid the higher rate.  Citing the Maryland Court of Appeals, *Zappone v. Liberty Life Insurance Co.*, 349 Md. 45, 706 A.2d 1060 (1998), the Plaintiffs argue that their claim is "wholly independent" of the Insurance Code and thus not subject to the exhaustion requirement. *Zappone* held that the plaintiffs' negligence claim was not subject to exhaustion because adjudication of the claim would not involve "interpretations or applications of the Insurance Code or any

7

regulations by the Insurance Commissioner"--*i.e.*, it was "wholly independent" of the Code. *Zappone*, 706 A.2d at 1071.[3]

Here, the Plaintiffs' claims rest upon the argument that the Plaintiffs were entitled to a discounted rate under the Code. If they were not so entitled, they will not be able to prove injury, and their negligence claim will fail as a matter of law. As in *Arthur*, "if the Insurance Code did not require [the Defendants] to adhere to its filed rates, [the Plaintiffs] would have no right to recover." *Arthur*, 569 F.3d at 161. Because their negligence claims depend upon the Insurance Code, the Plaintiffs are required to exhaust their administrative remedy before pursuing an action in Court. Thus, under *Arthur*, the claim would not survive a motion to dismiss.

---

[3] In *Zappone*, the plaintiff sued a life insurer for deceit and negligence alleging a series of misrepresentations by the insurer regarding the tax implications and potential performance of a life insurance policy he had purchased in reliance on those misrepresentations. *See Zappone*, 706 A.2d at 1064. The court held that although the alleged conduct was arguably prohibited by the Insurance Code, a common law action could be maintained because the plaintiff's claims did not require the Court to interpret and/or apply the Code, but rather was "totally dependent upon . . . common law tort principles." *Id*.

In *Arthur*, the Fourth Circuit distinguished *Zappone* on the ground that it "did not address a claim for exceeding filed insurance rates, but instead claims for fraud and negligence that were wholly independent of the Insurance Code." *Arthur*, 569 F.3d at 161. "[B]y contrast, [the Arthur plaintiffs' claim] explicitly depends on the statute that also makes administrative remedies available to plaintiffs." *Id*.

   b. Breach of Contract

The Plaintiffs' breach of contract claim alleges they and the Defendants entered into an implied-in-fact contract under which the Defendants had an obligation to charge a premium in accordance with its filed and approved Maryland rates and, generally, to act in good faith.  They argue if a contract "contains any term that violates the applicable provisions of the Insurance Code, that term will be invalid and the Contract will be construed in a manner that meets the requirements of the Code."  2d Am. Compl. ¶ 104.  Thus, because charging a rate higher than the discounted rate would violate the Insurance Code, the implied contracts with the Plaintiffs include the Defendants' discounted rates.  *Id*.  By charging a higher rate, the Defendants breached.  *Id*.  The Defendants also breached their obligation to act in good faith by failing to inform the Plaintiffs that they qualified for discounted rates.  *Id*. ¶ 105.

The Plaintiffs' proposed contract claim "depends" on the assumption that the rates charged to the Plaintiffs "violate[d] applicable provisions of the Insurance Code."  *Id*. ¶ 104.  As in *Arthur*, if the Defendants were not required to adhere to their filed rates, the Plaintiffs would have no right to recover.  Because their breach of contract claim depends on the Insurance

9

Code, it is subject to the exhaustion requirement and would not survive a motion to dismiss.

### c. RICO

The Plaintiffs also seek to add three civil RICO claims. RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). The Plaintiffs allege violations of § 1962(a), (c), and (d). To establish a violation of any of these subsections, the Plaintiffs must show, *inter alia*, a "pattern of racketeering activity."[4] The Plaintiffs allege that the Defendants engaged in mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and interstate transportation of stolen property in violation 18 U.S.C. § 2314. These violations would be "racketeering activity" under § 1961(1).

Like their negligence and contract claims, the Plaintiffs' civil RICO claim is based on the assumption that the Plaintiffs were entitled to a discounted rate under the Insurance Code and were thus victims of the Defendants' fraud and/or theft when they were charged a higher rate. Under § 1964(c), the

---

[4] *See, e.g.*, *Brige v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Anza v. Idea Steel Supply Corp.*, 547 U.S. 451 (2006). A pattern of racketeering activity requires at least two acts of "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(5).

10

Plaintiffs must show that they were "*injured* . . . by reason of a violation of [18 U.S.C. § 1962]." The Plaintiffs allege injury from the Defendants' scheme to "defraud[] the public by requiring them to pay title insurance premiums that exceeded the premium permitted by the filed rate," 2d Am. Compl. ¶ 116; the Plaintiffs were induced "to unwittingly pay excessive and illegal fees in respect in . . . mortgage loan transactions," *id*. ¶ 121. If the fees were not "excessive and illegal" under the Code, the Plaintiffs would not be able to prove injury. Their RICO claims thus "depend" on the Code, and, under *Arthur*, would not survive a motion to dismiss.

III. Conclusion

Each of the Plaintiffs' proposed claims requires proof of a violation of the Maryland Insurance Code. That would, in turn, require a determination "that the plaintiffs are correctly interpreting the rate structure that the [Defendants] filed with the Commissioner." *Arthur*, 569 F.3d at 161. As the Fourth Circuit has observed, the Maryland Insurance Commissioner is in a better position than this Court to make this determination. *Id*. at 161. Because, under *Arthur*, none of the Plaintiffs' proposed claims would survive a motion to dismiss, amendment

11

would be futile.  Accordingly, the motion to file a second amended complaint will be denied.[5]

| | |
|---|---|
| February 25, 2010<br>Date | _____/s/_____<br>William D. Quarles, Jr.<br>United States District Judge |

---

[5] Relying on authority from the Maryland Court of Appeals, the Plaintiffs assert that failure to exhaust administrative remedies does not require dismissal when, as here, the basis for the exhaustion requirement is that that the agency has "primary" but not "exclusive" jurisdiction. *See, e.g., Arroyo v. Bd. of Educ.*, 381 Md. 646, 851 A.2d 576, 583-85 (2004) (discussing the relationship of primary jurisdiction and exhaustion).  The Plaintiffs contend that this case should be stayed pending the outcome of the administrative proceeding. *See, e.g., Zappone*, 349 Md. At 60-61 (*citing McCullough v. Wittner*, 314 Md. 602, 552, A.2d 881, 886)) ("Whe[n] . . . the administrative agency's jurisdiction is deemed primary, it is appropriate for the trial court to retain, for a reasonable period of time, jurisdiction . . . pending invocation and exhaustion of the administrative procedures.").

The Plaintiffs argue that if a stay is proper, their claims are not futile because they could survive a motion to dismiss.  They also note that after moving to amend, they filed a complaint with the MIA, which may be pending. *See* Pl.'s Reply, Ex. 1.  *Arthur*--which is controlling--held that *dismissal* under 12(b)(6) is required when a plaintiff's claim depends on the Insurance Code and the plaintiff has failed to exhaust administrative remedies with the MIA. *See Arthur*, 569 F.3d at 160-62.  Because *Arthur* would require dismissal of the Plaintiffs' proposed claims, amendment would be futile.